## Higginbotham et al. v. Higginbotham's Trustee in Bankruptcy.

(Decided March 6, 1934.)

E. BERTRAM for appellants.
DUNCAN & BELL for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

W. C. Dabney, trustee in bankruptcy of W. W. Higginbotham, brought this suit against the bankrupt and his two daughters, Olivia Higginbotham and Evelyn Higginbotham, to set aside an alleged fraudulent transfer of an automobile from the bankrupt to his daughters on the ground that there was no consideration for the transfer and the transfer was made within four months next preceding the filing of the petition in bankruptcy. The daughters traversed the material allegations of the petition, and pleaded affirmatively that they purchased the automobile, that it belonged to them, and that their codefendant and father, W. W. Higginbotham, never owned the automobile or had any interest therein. A trial was had before a jury, and at the conclusion of the evidence the court directed a verdict in favor of the trustee. The court then set aside the transfer, and the Higginbothams appeal.

The facts are these: The car was purchased in August, 1931. The purchase price was $800. The bill of sale was made out to the bankrupt, and the license was taken out in his name. On August 3, 1932, the car was transferred by the bankrupt to his daughters. On October 14, 1932, and within less than four months thereafter, the petition in bankruptcy was filed. The assets of the bankrupt are about $8,000.00 and his liabilities $15,000. According to the bankrupt, he was insolvent at the time of the transfer and his daughters knew it. He never received any consideration for the transfer. The car was originally purchased from U. Y. Drake. The two girls bought the car. They had notes on him, and as soon as he could get the money he was to pay for the car and they were to give him credit on the notes they had. Part of the time the girls were present when the bill of sale was made out. The car was delivered to them at his home. He had no interest in the car except to keep it up, have the use of it, and buy the license.

After he executed his note for $800 the note was renewed, and was signed by him first, and then by the girls. The only payment on the car was $25, which Evelyn paid. The girls bought the car themselves. The girls made their home with him, and possession of the automobile had not been changed in the least, only the daughters used it a right smart. When he got hold of the money he meant to pay for it. He meant to see that Drake got his money. If he got the money, the girls were to credit him on what he owed them. Each of the girls had a note against him. Olivia's claim was $1,600, and Evelyn's claim was $1,200. Both these claims were filed against his estate. No credit was given him, as he had not paid the note off. Olivia Higginbotham testified, in substance, as follows: She knew that her father was insolvent at the time the transfer was made in August, 1932. She never paid her father anything for the car, as it belonged to her and her sister. She considered the automobile theirs because she and her sister selected it and were going to pay for it. Her father was present when the sale was closed. Her father executed his note for the automobile. The car was used as a family car. When they selected the car, they agreed with Mr. Drake on the price. She had three or four notes against her father aggregating $1,600. She had let him have the money at different times. She kept a record of it in her memory book, but destroyed the book when the note was given. The first sum she let him have was $200. She did not use the same book all the time, but had places where she put things down. She went to school and charged her schooling to her father. Her father had promised her a certain amount of education. According to U. Y. Drake, he sold the machine to Olivia and Evelyn, who came and selected it. Nothing was paid on it except a note which was executed by Mr. Higginbotham. Later on the note was renewed with the two girls as sureties. Mr. Higginbotham was present part of the time when the arrangements were made, and the bill of sale was made out to him. A short time before his bankruptcy, Mr. Higginbotham came to him and asked him to scratch the girls' names off the note, but he did not do it.

It is true that the statute (Ky. Stats. secs. 2739g-1 to 2739g-14) respecting registration and sale of automobiles is a police measure, and neither compliance nor noncompliance with its terms is always conclusive of

the question of ownership, and that one claiming an automobile attached as another's property may show, except as against innocent third parties, that he purchased it from another, and that latter was the true owner, though not holding under bill of sale from former owner as provided by statute respecting registration and sale of automobile. Moore v. Wilson, 230 Ky. 49, 18 S. W. (2d) 873. However, there is nothing in the evidence justifying the claim of the daughters that they were the real owners of the car. All the evidence shows is that they selected the car, and assisted in making arrangements for the purchase. The bill of sale was made to the father, the license was taken out in his name, and the original note for the purchase price was executed by him alone. His daughters never became obligated to pay until after the original note became due and the renewal note was signed by them as sureties. The fact that their father was indebted to them, and it was understood at the time of the purchase that he was to pay for the car if he got hold of the money and credit the amount so paid on the notes held by the girls, merely shows a roundabout arrangement of discharging his indebtedness, and falls far short of being sufficient to show any title or ownership in his daughters. It follows that the court did not err in refusing to submit the question of the daughters' ownership to the jury.

With the question of ownership eliminated, it is not claimed that the facts were not sufficient to authorize the setting aside of the transfer.

Judgment affirmed.