## Black Motor Co. v. Hensley.

(Decided Nov. 10, 1936.)

D. I. DAY and E. L. MORGAN for appellant.

HAWK & LEWIS for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

Finley Hensley, on January 11, 1934, owned a 1932 model Plymouth sedan with which he engaged in the taxi business at Whitesburg, Ky. The Black Motor Company was engaged on that date at Cumberland, Ky., in selling automobiles. Hensley went to its place of business to exchange with it his 1932 model for a 1933 model Plymouth sedan. He owed at that time $128 on his 1932 model and had in his possession $100 cash. He and the Black Motor Company agreed on the terms of the exchange of the automobiles. He paid it the $100 and it assumed the payment of the $128 owing on his automobile. The Black Motor Company priced its 1933 model at $814.16, including finance charges and an insurance premium. The agreed price of his 1932 model was $300. For the difference in the price of the automobiles, he executed and delivered to the Black Motor Company a note payable $45.18 each month for twelve months. The note provided: "Upon the non-payment of any installment at maturity all remaining installments shall become due and payable." A conditional sales contract for the 1933 model was executed and delivered by the parties. A lien was retained therein on the 1933 model in favor of it and the C. I. T. Corporation. By its terms the Black Motor Company agreed to finance Hensley's purchase of this automobile with the C. I. T. Corporation; also, to secure insurance in Hensley's name on the same automobile for the benefit of the C. I. T. Corporation and itself. The conditional sales contract and Hensley's note were assigned and delivered by the Black Motor Company to the C. I. T. Corporation, and an insurance policy, by it, was secured in his

**112**

name on the same automobile for the benefit of the C. I. T. Corporation and the Black Motor Company. The C. I. T. Corporation refused to finance the deal, and an insurance company issued the policy insuring the automobile as provided in the conditional sales contract. Later, it canceled and surrendered the policy. In February, 1934, Outhehrieth, the Black Motor Company's collector at Whitesburg, interviewed Hensley for the purpose of collecting the first installment due under the provisions of his note. At that time he informed Hensley that the Black Motor Company would not finance the purchase of his car and the insurance had been canceled, and that he wanted to repossess the car "or that he would have to get someone else to sign the note with him." Hensley testified and his testimony in this respect was corroborated by another witness, that he tendered the $45.18, the first installment, which is denied by the representative of the Black Motor Company. At that time the note included the C. I. T. Corporation's charge for financing the deal and also the Black Motor Company's charge for the premium on the insurance policy, amounting to $104.

On the 12th day of February, the Black Motor Company filed this action at law setting out the execution and delivery of the conditional sales contract and the note, alleging that "the whole of the note, $542.15, is now due, owing and unpaid; * * * that the title to the said Plymouth Sedan remained in the seller, Black Motor Company, until all the deferred payments in the sum of $542.15 were paid in full; at which time title would then be in defendant, Finley Hensley. * * * that it had a lien upon the automobile hereinabove referred to," which it sought to enforce to satisfy the $542.15. It secured an attachment against the property of Hensley, caused it to be levied on the 1933 Plymouth sedan, and sold. When it was sold under an order of the court, the Black Motor Company became the purchaser of it at the price of $605.16. It took possession of it; sold the 1932 model which it had received from Hensley in virtue of the conditional sales contract and the note.

The prayer of the petition asks for specific relief and further "it prays for all relief to which it is at law or equity entitled, and it would ever pray."

In his answer, counterclaim, and set-off, Hensley denied the allegations of the petition and amended peti-

tion, and further set out a detailed statement of the trade between him and the Black Motor Company and prices of the automobiles agreed upon by the parties at the time of the trade. He further pleaded that he had purchased and attached to the 1933 model Plymouth sedan, before it was levied on, a heater of the value of $18.50 and a mirror of the value of $1.50, which, when added to the $272, the net difference between the price of the two automobiles amounted to $292. In addition to the specific relief asked in his answer, he prayed "for all relief to which he may in law or in equity appear entitled in the premises." The cause was submitted for trial and judgment on the pleadings, exhibits, and proof offered by the parties. The court dismissed the petition and decreed that Hensley was entitled to recover the $272, the agreed difference between the two automobiles, $18.50 for the heater, and $1.50 for the mirror, amounting to $292, with interest from the date of the judgment until paid.

On the completion of the issues the cause was first submitted to a jury for trial, when the court, on its own motion, set aside the order swearing the jury, discharged it, and transferred the cause to equity. For reversal the Black Motor Company insists this was error. It further argues that the judgment is erroneous "because it is contrary to law and not supported by any competent evidence," and that the judgment is not authorized by the pleadings.

It should be admitted that, though the petition sought a judgment on a note, the fact that it also sought the enforcement of a lien authorized the court to transfer the cause to the equity docket for trial, and to try it as an equity case. Though neither party, in its or his pleading, sought to set aside or cancel the sales contract and note, the court did so on the pleadings and the evidence.

The rule is, on an issue joined in equity on the evidence of the parties, the court may grant them any relief the record shows they are entitled to. Smith v. Smith (Ky.) 121 S. W. 1002; City of Earlington v. Powell, 226 Ky. 353, 10 S. W. (2d) 1060, 1062.

In the last case, we stated the principles that "it [equity] may frame its decrees to meet the requirements of the particular case, and may adapt and adjust

114

the relief granted in such manner as will afford protection to the rights of all parties. In doing so the court is not restrained by any fast or technical rules inhering in particular modes of relief. Equity procedure is elastic enough to accomplish the ends and aims of justice, and it shapes its decrees accordingly. 21 C. J. sec. 845, p. 660. A decree in equity may be so molded that the relative duties of all parties affected may be secured and enforced. Bishop, Equity, sec. 7. 'The obligation to do justice,' said Mr. Justice Field in Marsh v. Fulton County, 10 Wall. [676] 684, 19 L. Ed. 1040, 'rests upon all persons, natural and artificial,' and a court of equity may exert its peculiar powers to enforce that obligation. Cf. Floyd County v. Owego Bridge Co. 143 Ky. 693, 137 S. W. 237.''

Under section 90, Civil Code of Practice, providing, "if defense be made, he [the plaintiff] may have judgment for other relief" "where he prays for all proper relief." Under this Code provision, where the parties following a prayer for specific relief ask for "all proper relief," as they have in the present one, it is our duty to view the judgment based on the evidence, and consider the case as though issues sustaining the evidence had been joined by appropriate pleading. Dotson v. People's Bank, 234 Ky. 138, 27 S. W. (2d) 673; Farley v. Gibson, 235 Ky. 164, 30 S. W. (2d) 876; Young v. Barnett, 258 Ky. 330, 80 S. W. (2d) 16; Board of Education of Pulaski County v. Nelson, 261 Ky. 466, 88 S. W. (2d) 17.

Reviewing the evidence for ourselves and testing the judgment of the court thereon by the foregoing principles, we find no reversible error in it.

The judgment is affirmed.