## Maynard v. Maynard et al.

Jan. 12, 1943.

Willis Staton and E. J. Picklesimer for appellant.

A. F. Childers and J. M. Moore for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

Appellant, prior to December, 1939, executed his note to the Pikeville National Bank and Trust Company, and to secure payment a mortgage on his home tract comprising about 300 acres. He was in default as to principal and interest when the bank sought to enforce its lien, the debt and interest at the time being around $1,380, and in November, 1939, default judgment was entered with directions to sell. On December 4th the land was sold under decree, and on December 20th appellant filed his petition in equity seeking to have the sale set aside because of inadequacy of sale price, and irregularities in the appraisement and sale, which appellant charges constituted fraud against his rights.

A second petition sought to enjoin the sheriff from executing writ of possession. Parties defendant were the bank, J. M. Maynard and the sheriff, and basic allegations of the petitions are similar, and substantially as follows: The master commissioner appointed two deputy sheriffs to and they did appraise the tract of land at the value of $2,000; it is charged that being interested in preventing redemption they fixed the value at low figures so that the tract would sell at more than two-thirds of the fixed value; that the land was appraised on the same day as the judgment was rendered and the appraisers did not view or know its boundaries, improvements or the character of the land.

It was asserted that the land with improvements was worth in excess of $5,000. Appellant says that on the day of sale he was the only bidder, his bid being the amount of the debt, interest and court costs; that the commissioner accepted his bid and told him that he would have time to execute the necessary purchase bonds, and that he undertook to comply, and was within a reasonable time able and willing to pay the amount bid. He was later advised that the commissioners had reported the sale as having been made to the creditor bank upon a similar bid. He had been advised by the bank that it did not desire to purchase the land, but only wanted its money; that he had a promise from his brother J. N. Maynard that he would become surety on the bond, but that

after sale the brother failed to carry out his agreement. Court was about to adjourn, according to his belief, on Saturday the day fixed by statute for the ending of the term, and relying on the alleged statement of officers of the bank, he came in ready to make payment, when officers of the bank informed him that another party had been promised the land if he failed to make payment; that they delayed letting him know otherwise until late in the afternoon, then deed had been made to the bank, and in turn to the brother, who had paid the debt and costs.

The petition charged that when his bid was accepted the commissioner said, ''Now if you fail to give bond by two o'clock this property will be sold again,'' which was misleading to him in view of other statements made by the officers of the bank, and that the bank was not a bona fide purchaser. Maynard said that he was uneducated and did not know his legal rights, that had he so known he would have employed counsel to look after his interests and filed exceptions, but relied on the representations of the creditor and the commissioner, and that their actions, in connection with his brother's part in the transaction, resulted in his being deprived of his right to purchase or redemption.

The bank and J. N. Maynard filed separate answers, in the main denying the allegations of both petitions; the bank, which is apparently only interested to the extent of securing payment of its debt, plead affirmatively that the judgment in its favor was rendered on November 15, 1939; that the property was sold by the commissioner on December 4th; the sale was approved on December 8th, on which day the commissioner made, and the court approved the deed to it, but it was not lodged for record until the 12th; that at all times during the proceedings officers of the bank had told plaintiff, after it bid the property, it would willingly execute a deed to him if he could make final arrangements to pay the debt, but that in the event J. N. Maynard made arrangements to pay, it would carry out the obligation to him.

The brother's pleading undertook to plead the facts insofar as he was concerned, both defendants relying on the plea of estoppel; that the brother was a bona fide purchaser at fair value, and since plaintiff stood by and allowed the report to be confirmed and deed made without exception, he is now estopped to question

the sale on the grounds alleged. Allegations of undenied pleadings were controverted of record.

The record shows that on March 12, 1940, the appellant tendered the sum of $1,388.33 in full settlement of what he conceived to be the amount of the bank's judgment against him, same to be paid to the bank or to J. N. Maynard in the event the two deeds be cancelled. This tender was withdrawn after the court had rendered judgment. At the May term 1941, the cases having been consolidated were submitted on pleadings and proof, and the chancellor denied plaintiff's relief, and dismissed the petitions.

On behalf of appellant it is insisted that the disparity between the appraised value and the real value of the land was so great as to create a presumption of fraud, relying upon the case of Morton v. Wade et al., 175 Ky. 564, 194 S. W. 802, in which is laid down the general rule that while inadequacy of price, standing alone, is not a sufficient ground to void sale, unless the inadequacy is so great as in itself raises the presumption of fraud or to shock the conscience of the court; but when in connection with inadequacy of price there are other circumstances having a tendency to cause such inadequacy or any apparent unfairness or impropriety, the sale may be set aside although such additional circumstances are slight, and if unaccompanied by inadequacy would not furnish sufficient grounds for voiding the sale. This rule has been referred to both in former and recent cases the latter being Smith v. Halowell, 201 Ky. 271, 272, 256 S. W. 408, and Kentucky Joint Land Bank v. Fitzpatrick, 237 Ky. 624, 36 S. W. (2d) 25.

It is here charged that there were such irregularities in the sale as to void it, even in the absence of the element of inadequacy, the general charge being that by the actions of the brother, the creditor and the court officers, he was disarmed, and did not have opportunity to protect his legal rights. He claimed, and there is no proof otherwise, that he did not know the property had been appraised at $2,000 until announcement was so made by the commissioner, and under all the circumstances he was under the belief that he would be allowed to bid the amount of the judgment debt and redeem his property.

When the sale was first made he was the sole bid-

der. He was surprised at the statement of the master commissioner, who made the sale at one o'clock, that unless he executed purchase bond by two o'clock he would resell, as he was by his brother's refusal to become surety on the bond. This the brother in a way indirectly denies, saying that "just a few minutes before the sale he said something about me going on his bond; the best I remember I told him that I didn't know whether they would take me on a bond like that or not," though he says after the sale he was not approached by the plaintiff. Appellant says that "he talked like he did not want to go on the bond."

There are undisputed record facts. The property was advertised to be sold on December 4, 1940. We gather from the record that appraisement and report of sale was made on the same day and confirmed on the 8th day of December, when deed was executed to the bank by the commissioner and approved by the court, and on the same day the bank conveyed the land to J. N. Maynard apparently for amount of judgment debt.

We take up first the proof as to the value of the land, as was developed by testimony of appellant. He testified that there were 300 acres; 20 were good bottom land, reasonable worth $100 per acre. He described the buildings and his orchard and their values. While the gas rights had been sold, the land was underlaid with coal; he said such land was reasonably worth $10 per acre. Without going into details his summation would place the value of his land at more than $10,000. He introduced eight or more witnesses who were familiar with the land; their estimates of the fair value were in all instances above $6,000, all agreeing that the bottom land alone was worth the appraised value.

Appellant had listed his land at $4,000, and his brother had acted as appraiser when appellant was seeking the loan and had appraised the same land at $3,000, but says due to removal of timber and lack of care it was not of that value at the time of sale.

The two deputy sheriffs who appraised the land testified for plaintiff. One said that when he appraised it he did not know the acreage, and did not understand the home place was included. Since the sale he had been over the property, ascertained the boundaries, and estimated its value at $5,000. This witness seems to make

it appear that his appraisal was perfunctory; that he was told by the commissioner that appellant was going to bid it in. The other appraiser made his appraisement from information gained from the commissioner. He thought he was appraising about 200 acres; he was told the gas was gone, but there was still some coal. On having his attention called to matters not theretofore considered, he said the fair value would be around $6,000.

The commissioner testified for appellees. He offered the property at one o'clock. The creditor bid debt, interest and cost, and appellant made the same bid. He notified "all parties that if bond was not executed immediately I would come back to the courthouse door and resell it at two o'clock." Appellant had not executed bond by the time fixed, and "when the clock struck two I then got up on the courthouse steps and offered the property again," and the bank bid its debt, interest and cost. He thought he saw appellant as the time of the resale. After the sale appellant did not say anything about executing the bond. The brother J. N. Maynard asked the commissioner before sale what the appraisement was. Appellant told the officer that he was going to bid, and that the brother was going to sign the bond. He learned after the sale to the bank that J. N. was to have the bid transferred to him. The bank president had told the commissioner to have report and deeds ready "as soon as the law will permit."

The bank officer testified that appellant had told him that he would bid the judgment debt. He was fearful that appellant could not give bond, and told the commissioner if he did not do so he wanted it resold. In thirty minutes or an hour he saw the officer and asked if appellant had furnished bond, and he replied that he had not and he "had knocked it off to the bank." He had talked to J. N. prior to sale and learned that he would take the property and pay the judgment debt. Appellant came in the day after the sale and said he wanted to pay off; the bank officer told him he would be glad if he could hold the property; that the bank only wanted its debt, but could not do anything until the sale was confirmed, "and you take such steps as are necessary to make your financial arrangements and pay it off if you want to do it. He kept coming back; I felt sorry for him and wanted to do something for him."

The sale was made December 4, and approved on

the 8th. After the sale appellant came back to the bank, and the officer told him of another case which had caused bother, ''where even after the report of sale was confirmed, and that he did not want to take action in this thing until court finally adjourns, but you go out and see if you can get your money to take care of it.''

Later he told appellant that his brother had been in and offered to pay the judgment and take the land. ''It seems at about this time appellant brought a Mr. Ray who said he was willing to furnish the money,'' and the bank officer said ''all right, and if J. Ned Maynard don't get his money up we'll be glad to turn everything back to you, but understand I am under moral obligation to J. N. Maynard, but I am not going to let him have it until court adjourns.'' The court was extended for one day, and on the following Monday (day of extension) the officer saw appellant and told him the brother had paid off, though the deed had been executed to him on the 8th of December. The officer says very frankly that appellant brought a Mr. Ray in for the purpose of paying off, but this was after the sale was approved, and after ''I had made my promise to the brother.'' The brother insisted that he realized that Talmage could not hold the farm, and that he bought it so that it would remain in the family, which would be praiseworthy except for his repeated offer while he was testifying that he would willingly convey to Talmage if he would pay him profit of approximately $600.

The testimony of appellant would add nothing to that quoted, but it would further demonstrate that he was disarmed and misled as to proposed actions, to an extent which would authorize him to maintain his suit in equity; that is the only question in this case. We say this because there is not the least doubt that had the appellant filed timely exceptions to the report the lower court, under the facts shown, would have annulled the sale, or in failing to do so this court would have done so.

The opinion in Elswick v. Justice, 287 Ky. 632, 154 S. W. (2d) 714, would alone be ample authority, and it is noted that one of the appraisers in this proceeding, with another, appraised the Elswick property. In that case we said that the ''inadequate appraisement resulted from the mistake of the appraisers in valuing only part of the land to be sold, which tended not only to af-

fect the price received at the sale, but also deprived appellants of their right of redemption.''

There were exceptions filed in that case which cites as authority Henderson v. Henderson, 266 Ky. 319, 98 S. W. (2d) 904; Melton v. Tipton, 264 Ky. 196, 94 S. W. (2d) 350, and the case of Koontz v. Butler, 238 Ky. 406, 38 S. W. (2d) 204, where we indicated that the inadequacy of price, accompanied by circumstances which tend to cause it, will justify the voiding of the sale. We may say here that where there is shown great inadequacy of price, it is not necessary to prove actual fraud or collusion, but it is sufficient to show additional circumstances, though slight and insufficient in themselves to establish irregularity or unfairness. Louisville Title Co. v. Ramsey, 258 Ky. 183, 79 S. W. (2d) 693, citing cases.

We are not unmindful of the prevailing rule that the court is extremely limited in its power to set aside judicial sales in absence of timely exceptions. Commonwealth v. Harkness, Adm'r, 181 Ky. 709, 205 S. W. 787; Baker v. Baker, Eccles & Co., 162 Ky. 683, 173 S. W. 109, but under certain circumstances and proper showing the court may set aside a judicial sale after confirmation, and at a subsequent term. Lowther v. Moss, 239 Ky. 290, 39 S. W. (2d) 501. In Crawford v. Riddle, 241 Ky. 839, 45 S. W. (2d) 463, there was an attempt by the judgment debtor, at a subsequent term of court, to set aside a former judgment and report of sale. This was on motion, and the court pointed out that it was elementary that such relief could not be had on motion after finality of judgment, but that such relief might be granted under the facts by following sections 344 or 518 of the Civil Code of Practice.

The court turned to Bowles' Guardian v. Johnson, 218 Ky. 221, 291 S. W. 29, for a discussion of the principle, which while reannouncing the strict rule, said that had there appeared later something unknown to the party seeking relief at the time of confirmation, he might find relief under one or the other sections of the Code. That such relief is proper under a sufficient showing, see Robbins v. Hopkins, 251 Ky. 413, 414, 65 S. W. (2d) 54 and cases cited; Bean v. Haffendorfer Bros., 84 Ky. 685, 2 S. W. 556, 3 S. W. 138; Buttermore v. Hensley, 267 Ky. 669, 103 S. W. (2d) 68; Yowell v. Gaines, 2 Bush 211, 65 Ky. 211, 212; May v. Vaughn, Ky. 91 S. W. 273; Tipton v. Parrott, 214 Ky. 186, 282 S. W. 1099.

In the Crawford case we said that Section 518 of the Civil Code of Practice was broad enough in its scope to apply to every action or proceeding, by whatever name it may be called, wherein a party by casualty or misfortune is prevented from having a hearing. While it is claimed the petition was insufficient to state a proper cause, we are of the opinion that though inartistically drawn, it was sufficient to state a cause under the provisions of the Civil Code of Practice, supra. The prevailing rule in the majority of jurisdictions is that after confirmation, the right is vested in a court of chancery to set aside a judicial sale when a proper case is presented by way of direct proceeding brought for the purpose, provided the grounds be sufficient to justify the court in applying equitable relief. Am. Jur., Vol. 31, p. 526. The case before us measures up to requirements.

It may be doubted whether or not the commissioner had the authority to make the alleged resale without sanction of the court which was then in session. Barnett v. Bank of Commerce, 264 Ky. 179, 94 S. W. (2d) 334, cases cited; Louisville Trust Co. v. Ramsey, 258 Ky. 183, 79 S. W. (2d) 693. While we cannot say there was actual fraud or collusion shown, yet the circumstances attending and following the sale were such as, when coupled with the inadequacy of price, justify setting aside of the sale.

The judgment is reversed with directions to set aside the report of sale, and upon tender by appellant of the amount of his debt, interest and cost within reasonable time, to cancel the deeds to the bank and J. N. Maynard, and require the Commissioner to execute deed to the appellant. In event of his failure to seasonably make proper tender, the court will direct resale.

Judgment reversed.