## Hunter et al. v. Hunt et al.

March 3, 1944.

Thomas S. Yates and W. W. Jayne for appellants.

John F. Coldiron for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

The appellant, Alma Hunter, whose husband had abandoned her, was indebted to the appellee, Hunt, for money borrowed by her and her husband secured by a mortgage on her home at Fullerton. Suit was instituted, and on November 27, 1939, a judgment was entered awarding Hunt the amount of his debt and directing a foreclosure of the lien. The sale was advertised to be held on January 8, 1940, at Greenup, and Thomas S. Yates, Alma Hunter's brother-in-law, had arranged to attend the sale and bid in the property in the name of her unmarried daughter, the appellant, Nell Hunter, who was to hold the title for her mother. At that time, the debt, including interest, amounted to $653. Through the efforts and indorsements of Yates and another relative, a bank loan had been negotiated to provide the necessary funds, and this loan, the daughter, who was

employed in Cincinnati, had undertaken to discharge by payments out of her earnings. Yates, who is an attorney at law residing at Grayson, arrived at Greenup about nine o'clock A. M. on the day of the sale accompanied by Miss Hunter, and learning from the Commissioner that the sale would not be held until much later in the day, called upon John F. Coldiron, who represented the appellee, Hunt, in the foreclosure suit, and informed him of his purpose to bid in the property. As related by Yates in his deposition:

"I was very busy on a case in Boyd County so I went down that morning to see the Master Commissioner, who is Mr. Coldiron's son and had an office adjoining Mr. Coldiron's. He informed me that it would not be sold until 1:30 P. M. and since it was very important that I get to Boyd County on this case I made an agreement with Mr. Coldiron, attorney for Mr. Hunt, that he would bid in the property and that would assign that bid over to Nell Hunter, her to pay the debt, interest and cost. It was to be sold on 6 months time but we agreed that by the 1st of February that it should be closed up and for them to get the assignment and I would see that the money was paid before the first of February. Mr. Coldiron informed me that it would be perfectly satisfactory and that all Mr. Hunt had in the property was his debt and with that distinct understanding I came back to Boyd County and I also asked Mr. Coldiron to let me know the outcome of the sale."

The following is from Mr. Coldiron's testimony as to the agreement he made with Yates on the day of the sale: "Mr. Yates said that he had to leave on the next bus for the Boyd Circuit Court, and, knowing about the importance of the case he referred to and in which he was attorney, it being quite a celebrated criminal case, and realizing the importance of the case to him and his client, and desiring to accommodate a fellow lawyer, and a man for whom I had very high regard, I agreed with him that the sale should be made and Mr. Hunt should buy the property but I would not have a deed made to Mr. Hunt until I heard further from him which he assured me would be before February 1st. following. With this understanding he left my office."

On January 15th, Coldiron wrote Yates, informing him that the property had been purchased at the sale

by Hunt for $667, two-thirds of its appraised value; but that "I am having trouble with my client to get him to agree to carry out our understanding. Of course, when you were here I had not talked to him but felt that he would agree to this arrangement. I am still endeavoring to get him to agree to it. I wish you would get Mrs. Hunter to talk with him and see if he will agree for her to arrange to pay the matter off by the first of next month as you and I talked. He was in my office today and I had quite an earnest talk with him but did not make much progress. I believe if Mrs. Hunter would talk with him herself, she might reach an understanding with him."

From these admissions it is apparent that Coldiron made the agreement substantially in the form claimed by Yates. That it was relied on by his clients is shown by the fact that Miss Hunter left for Cincinnati without waiting for the sale, and Mrs. Hunter, who did attend the sale, made no bid. We think also that the subsequent conduct of Hunt in his interviews with Mrs. Hunter, and the efforts of Coldiron to induce him to abide by the agreement, justified the Hunters in believing that eventually the agreement would be complied with, and excused their failure, now dwelt upon at length by Hunt, to file exceptions to the report of sale which, on Coldiron's motion, was confirmed on January 27th. Whether or not a tender of the money was made on February 1st, as claimed by Yates, or whether the tender was insufficient or should have been made before February 1st, as urged by Hunt, is immaterial in view of the fact that the sale had been previously confirmed and our conclusion that Coldiron's agreement that his client would buy in the property and convey it to Yates' clients is unenforceable. However, as illustrative of the mistreatment to which appellants have been subjected as the result of Hunt's unconscionable conduct, it is not amiss to note the fact that the proof leaves no doubt that appellants were able and eager to pay Hunt the full amount of his debt, interest, and costs on, and for some days preceding February 1st, and even after that date, had reason to believe that he would ultimately comply with his attorney's contract, as shown by the following excerpts from a letter written by Coldiron to Yates on February 9th:

"Harry Hunt did not come here until last Monday. I understood that he told you and Mr. Criswell that

he would be here the next day after you talked with him, but he did not come. When he was in my office on Monday he was drinking and I could not get any satisfaction out of him about this property.

"I think Mrs. Hunter or some of her friends should go to him and if he says that he will transfer the property to the daughter, get him in the car and bring him up here at once, or have a paper there for him to sign. He seems to tell her and the daughter that he will do this, and I think he means it when he says it, but when he gets away he either changes his mind or delays the matter. I will be glad to cooperate with you in every way I can to get him to assign his bid or transfer the property to the daughter. I think it is just and right that he should do so, but I am unable to get any satisfaction from him. * * *

"If you can work out some plan by which we can reach the end in which we are interested, please let me know and I will be glad to help in any way I can."

The present action, filed by the Hunters on September 13, 1940, to enforce the agreement, was dismissed by the Chancellor because of his conclusion, with which no fault can be found, that Coldiron was not expressly authorized by Hunt to make the contract sued on, and was not vested with such authority by reason of his employment as attorney. On this appeal appellee makes the further assertion that since Miss Hunter had no title to the property, the contract was unenforceable because of the provisions of subsection 6 of the Statute of Frauds, KRS 371.010, a contention with which we are unable to agree, since Miss Hunter was acting for her mother who did have title. Doom v. Brown et al., 171 Ky. 469, 188 S. W. 475.

However, we regard none of the cited principles of law as controlling the proper disposition of this case. As we see it, the Court should have set aside the sale and ordered a resale. True, the petition did not contain a prayer for such relief; but it did recite the facts and contained a prayer for "all other proper and appropriate relief;" and since the action was defended, the Court had the power to award any redress which the law and the facts justified. Civil Code of Practice, Section 90; Black Motor Co. v. Hensley, 266 Ky. 110, 98 S. W. (2d) 281.

It is a settled rule in this State that a judgment decreeing a sale and the order confirming the report of sale are separate and distinct adjudications and that the latter may be separately appealed from and set aside. Forrester et al. v. Howard et al., 124 Ky. 215, 98 S. W. 984, 124 Am. St. Rep. 394; Moore v. Wellman's Adm'x et al., 288 Ky. 258, 156 S. W. (2d) 100. It is also the rule that while a sale which has been confirmed without exceptions having been filed will seldom be set aside after the expiration of the term, nevertheless, the Court has the power to do so under the provisions of Section 518, Civil Code of Practice; and in cases of fraud resulting in injury to the complainant, will exercise the power even though the fraud be of the character denominated "constructive," rather than actual.

As to what constitutes fraud sufficient to entitle a party to a new trial, we said in the case of Johnson v. Gernert Bros. Lumber Co., 255 Ky. 734, 735, 75 S. W. (2d) 357: "The appellant's pleading, proof, and argument are that she and her counsel were misled by her adversary's attorney. This is a ground, if established, always recognized as sufficient to entitle a party to a new trial. In deducing it from the statutory delimitation of the right to reopen a case, the word 'fraud' is not confined to its vicious import of a wicked motive or deliberate deceit, or an affirmative evil act purposefully conceived, but is deemed sufficiently expansive to embrace merely leading astray, throwing off guard, or lulling to security or inaction, be the intention or motive good or bad, with a resultant advantage to the one and an apparent injustice to the other."

As to the breadth and scope of the power of the Court under Section 518, Civil Code of Practice, see Fillhardt v. Schmidt and Rardin's Adm'x v. Schmidt, 291 Ky. 668, 165 S. W. (2d) 155.

Particularly applicable to the present case are the principles discussed in our opinion in the case of Maynard v. Maynard et al., 292 Ky. 638, 167 S. W. (2d) 853, since there, as here, no exceptions to the report of sale were filed, and the petition to set aside the sale filed by the owner of the property on which the mortgage had been foreclosed, though "inartistically drawn" and based upon no more potent grounds for relief than

those here shown, was held sufficient to state a cause of action.

We think it obvious that the facts in this case cry aloud for any relief within our power to grant. Cold-iron's conduct is not subject to criticism, but that of Hunt in repudiating his attorney's agreement by which he would have received all to which he was entitled is indefensible. While we cannot compel him to convey the property to appellants, and have no desire to deprive him of his debt or to diminish its security, we can protect the interest of all concerned by directing that the sale be set aside and a new sale ordered.

Appellee's motion to strike appellants' original and reply briefs, and dismiss the appeal because of their failure to comply with subdivision 2 of Rule 5, requiring a classification of points and authorities by the respective litigants, is overruled. While an offending litigant renders himself liable to the infliction of the penalties prescribed, nevertheless, the rule is primarily for the benefit of the Court which may impose the penalties at its discretion or withhold them when, as here, it has reached a conclusion as to the merits of the case without having been inconvenienced by the omission and before a motion to strike the briefs has been made.

Judgment reversed for proceedings consistent with this opinion.