## Bevins v. Ford.

May 17, 1946.

Francis M. Burke for appellant.

V. R. Bentley for appellee.

Opinion of the Court by Judge Thomas—Affirming.

This action was brought by appellee, Ann Ford, against appellant, Denver Bevins, in the Pike circuit court by which plaintiff sought recovery of possession of a ½ ton Ford Pick-up truck which she alleged was her property, and that she was entitled to its possession but which defendant detained and refused to return it to her after repeated requests therefor. She alleged that its value was $1,000, and the prayer of her petition was "for judgment against the defendant for possession of said property, for proper damages for the detention thereof, for her costs herein expended and for all proper relief to which she may appear entitled in the case."

Defendant's answer was a general denial of the material averments of the petition. At the close of the evidence the court overruled defendant's motion for a peremptory instruction in his favor dismissing the petition,

on the ground that the evidence failed to show ownership of the property by plaintiff. It then submitted the issues to a jury under instructions Nos. 1 and 2, the first of which said:

"If you believe from the evidence that the plaintiff, Ann Ford, bought the truck in controversy from Frank Good for herself and that she furnished the money that paid the purchase price of said truck to said Frank Good, but had the bill of sale made to the defendant, Denver Bevins, without intention to place the ownership of the truck in said Denver Bevins, in this event you will find for the plaintiff the truck in question, if to be had; if not, its value, not to exceed $1000.00, the amount claimed in the petition. Unless you do so believe, or if you believe as set out in Instruction No. 2, you should find for the defendant."

Number 2 was the converse of that instruction in favor of defendant, if the jury found that he had purchased the truck and paid for it with his own money.

The testimony reveals that plaintiff was a widow, while defendant was unmarried, and for some time prior to a day in May, 1944 (the exact date not being shown), defendant resided in the home of plaintiff, and they were living together as man and wife, although never married. During that relationship defendant acquired and operated a small country store in a remote part of Pike County located on the premises occupied by plaintiff, and he lived with her and her infant children as a member of the family. He needed a truck in connection with the operation of his small mercantile establishment, and plaintiff directed him to a Mr. Frank Good, who resided in Pikeville, who then owned the truck and had offered it for sale. Defendant did not contact Mr. Good about purchasing the truck, but plaintiff did do so shortly thereafter and Good priced it to her at what each of them thought was the ceiling price for such property, which was $650. She then, according to her testimony, corroborated by Good and the latter's wife, and in the absence of defendant paid Good five one hundred dollar bills, and later paid the balance of the purchase price of $150 at short intervals; but defendant testified that he gave the money to plaintiff with which such payments were made, which plaintiff denied.

Some few days later Good executed a bill of sale at

which time plaintiff, defendant and Good's wife were present. According to the testimony of plaintiff and the other witnesses present on that occasion—other than defendant—the seller asked plaintiff:

"* * * who do you want this bill of sale made to; I says, I don't care which one; and Denver says, you had better make it to me; Rich Wells is going to have a suit against you for your furniture and he will tie up the truck, but he says, I don't care whose name you put it in, whether yours or Junior's or mine; and I says, I don't care which one."

That testimony was corroborated by other witnesses in the case and not disputed by defendant. Therefore, his volunteered suggestion that the sale bill be made to another than plaintiff because her alleged creditor might subject it to the payment of her debt, when he alone purchased the truck, as he testified, and that plaintiff paid no part of the purchase price, is inconsistent with reason and logic and possesses no convincing force, since, if, as he contends, he was the sole purchaser of the truck and paid for it with his money there could be no reason for inquiring as to whom the bill of sale should be issued.

Plaintiff testified that defendant never at any time paid any amount whatever on the purchase price of the truck, in which she was positively corroborated by the witness, Good. Plaintiff introduced one Paul Rowe who testified that defendant, after the truck was purchased from Good, was negotiating to and had about agreed to sell it to one Frank Phillips, a brother-in-law of witness. The trade, however, was not consummated, and Rowe testified that in a later conversation with defendant as to why the sale to Phillips was not made, defendant said: "He (defendant) had decided not to sell it, Ann (plaintiff) backed out; and he says, 'You can go to see Ann, and if she is willing, it is alright with me.'"

To combat the plaintiff's proof of ownership and to establish his, defendant, in answer to this question, "Tell the jury when it first came to your attention that Frank Good had a truck which he would sell," said:

"Well, Ann come home one evening and says, 'Frank has got a truck down there, you can go down and buy it if you will go down there,' and I guess in about a week I went down to buy it; and I asked what the price was and she said, '$800.00, he says he can get

$1,000.00 'out 'of it out of the United Carbon, but between the family he is going to let you have it for $800.00', and I pulled out $500.00 and handed it to Ann and Ann give it to Frank, and we come out here and fixed the bill of sale up, and I had about $600.00; and I says I can't pay all of it down, and I have to keep some for my place of business, and he said that was alright I could pay it in payments, and I went ahead, and I don't know how I paid it, may be $50.00 or something and I would send it down by Ann, and she said she paid him; I don't know whether she even paid him or not, but I give her the money.''

As we have stated, all of the other witnesses having knowledge of the transaction positively contradicted the testimony of defendant. He admitted the conversation he had with the witness, Rowe, and on being asked as to why he made that statement to Phillips, the contemplated purchaser of the truck, he said: ''Well, I was telling a tale and hated to make the man mad, and a man has to have an excuse, and I didn't want him mad at me.'' Defendant's proof as so outlined, plus the execution of the bill of sale to him in the circumstances and in the manner above related, was all the proof to support his alleged ownership of the involved truck. Counsel for appellant, with much fervor, argues that the bill of sale made out to defendant instead of to plaintiff as the purchaser of the truck is 'of such weight and potency as to require the court to sustain his motion for a peremptory instruction on behalf of his client.

The weight to be given to a bill of sale of motor vehicles, as against one asserting title in opposition thereto, has been before this court in a number of cases, some of which are: Moore v. Wilson, 230 Ky. 49, 18 S. W. 2d 873; Boden v. Harter, 240 Ky. 138, 41 S. W. 2d 920; Higginbotham v. Higginbotham's Trustee, etc., 253 Ky. 218, 69 S. W. 2d 329; Cartwright v. C. I. T. Corporation, 253 Ky. 690, 70 S. W. 2d 388, and Crook v. Blackburn, Sheriff, 254 Ky. 405, 71 S. W. 2d 986. In each of them we held that the bill of sale was not conclusive on the question of title and ownership of the vehicle, and that the title of the one to whom the bill of sale was issued might be impeached by parol testimony clearly showing that the true title was in another. The evasive testimony of defendant, coupled with that given by plaintiff and her three witnesses, was and is amply sufficient,

as we conclude, to overcome the evidentiary effect of the bill of sale, and the court correctly overruled defendant's motion for a verdict in his favor. The verdict of the jury was, "We, the undersigned jurors, agree and find for the plaintiff the truck, if to be had, if not, its value, the sum of $650.00." It was signed by eleven members of the jury and judgment rendered accordingly.

Another alleged error sufficient to authorize a reversal of the judgment, as argued by defendant's counsel, is that the prayer of the petition was insufficient to authorize the giving of instruction No. 1 supra authorizing the recovery of the value of the truck if it was not to be had, since plaintiff had not specifically prayed for such alternative relief. We have hereinbefore seen that plaintiff did pray for the recovery of the possession of the truck from defendant and for proper damages for its detention "and for all proper relief to which she may appear entitled in this case."

This court in the early case of Bates v. Buchanan, 2 Bush 117, as we construe the opinion, determined this contention—in the same character of case—contrary to counsel's contention as to this alleged error, and in annotations to section 90 of our Civil Code of Practice a number of cases are listed pointing out the relief that may be given under a prayer for "other relief to which the (pleader) may appear to be entitled." Some of these cases are: Heckling v. Gehring's Ex'r, 100 S. W. 824, 30 Ky. Law Rep. 1198; Illinois Cent. R. Co. v. Davidson, Ky., 115 S. W. 770; Alexander v. Owen County, 136 Ky. 420, 124 S. W. 386; Cooper v. Williamson, 191 Ky. 213, 229 S. W. 707; Farley v. Gibson, 235 Ky. 164, 30 S. W. 2d 876; Lincoln Bank & Trust Co. v. Arnold, 256 Ky. 80, 75 S. W. 2d 751 and Black Motor Co. v. Hensley, 266 Ky. 110, 98 S. W. 2d 281. Our determinations in them were that where there is a prayer for general relief in the petition, *and defense is made to the action,* the court may decree the relief that the plaintiff shows himself entitled to, although it is not specifically asked for in the prayer of the pleading. We think the prayer of plaintiff's petition was amply sufficient to bring it within such declared rule of practice, and especially so in the light of this court's decision in the Bates case supra.

It is argued by counsel for appellant that plaintiff is not entitled to the relief she seeks, notwithstanding

she may have been the true purchaser of the involved truck, since she agreed for the title to be placed in defendant in order to defeat her creditor, Rich Wells, which perhaps would be true if the premise upon which the argument is founded were itself true. However, no one testified that plaintiff owed Rich Wells or any other person any amount whatever, and plaintiff positively denied any such indebtedness. If the volunteered statement of defendant at the time the bill of sale was made out had been true then Wells, the alleged creditor of plaintiff, would have been a most important witness to prove that fact; but defendant failed to produce him. Plaintiff testified that she did not owe Mr. Wells or any other creditor at that time any amount, and the failure of defendant to produce Wells or other legitimate proof to establish that fact, left no contrariety of legitimate proof on the issue of fraud to be submitted to the jury, and it necessarily found that no such fraud was attempted by plaintiff in consenting that the bill of sale be made to defendant.

The final complaint of appellant's counsel against the judgment for the value of the truck is that there was no proof showing its value at the time it was wrongfully converted by defendant. It, however, will be perceived that Good testified that the ceiling price fixed by the Government for such a vehicle was $650. Defendant testified that he paid $800 for it, and it appears from defendant's testimony that Good had priced the truck at $1,000, but later sold it for much less than that, no doubt, because a sale at that price would have subjected him to prosecution by the Federal Government. There is other fragmentary testimony in the record indicating that the true value of the truck at the time of its sale by Frank Good was as much as the amount of the jury's verdict and which disposes of this contention of counsel as ground for reversal.

Wherefore, for the reasons stated, the judgment is affirmed.