**GOVERNMENT EMPLOYEES INSURANCE COMPANY, Appellant,**

v.

**Geraldine THOMAS, Appellee.**

**GOVERNMENT EMPLOYEES INSURANCE COMPANY, Appellant,**

v.

**Virgil THOMAS, Jr. et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 22, 1961.

As Modified on Denial of Rehearing

June 15, 1962.

Faurest & Collier, Elizabethtown, Morris & Garlove, Louisville, for appellant in both cases.

Raymond C. Arny, William A. Miller, Louisville, for appellees.

MOREMAN, Judge.

The first of the above styled cases is an appeal as a matter of right. The second case is before us on motion for appeal. The cases have been consolidated.

Appellant, Government Employees Insurance Company, issued a liability policy to Chriss Yoder, covering a Sunbeam automobile under which appellant undertook:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury' sustained by any person;

"B. injury to, or destruction of property, including loss of use thereof, hereinafter called 'property damage';

arising out of the ownership, maintenance or use of the owned automobile, or any non-owned automobile, and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient."

After the issuance of the policy, Yoder was involved in an automobile accident which resulted in verdicts against him in the total amount of $5,234. The question on this appeal is whether the policy covers that liability. The lower court held that it does.

Prior to the accident Yoder owned three vehicles; the Sunbeam automobile covered by the policy, a Harley-Davidson motorcycle and a Chevrolet automobile. Some time before the accident the Sunbeam became disabled and was placed in a garage for repairs. About six weeks before this time Yoder had surrendered possession of his Chevrolet to Harry E. Williams and although there is some indication that Williams desired in the future to buy the automobile, the meager testimony on this point indicates that at most Yoder had surrendered the car in the hope that Williams would buy it from him. Williams later testified:

"A. It was a 1950 Chevrolet.

"Q. Tell the Court whether or not you and Chriss Yoder had made a contract involving that automobile shortly prior to the happening of this accident? A. We did. We had come to a verbal agreement that I was to buy the car and pay him as soon as I could get the money, and then it would be my own automobile.

"Q. Now, after the making of this verbal agreement that you have mentioned did Yoder give you possession of the automobile? A. He did."

In addition, there had been no transfer of title under KRS 186.020. We recognize that compliance or non-compliance with the provisions of this statute is not conclusive of the ownership of a car. Higginbotham v. Higginbotham's Trustee, 253 Ky. 218, 69 S.W.2d 329; Moore v. Wilson, 230 Ky. 49, 18 S.W.2d 873. However, the failure to comply, in itself, is of some evidentiary value which, when taken with the testimony, convinces us that the agreement expressed little more than the hope that some time in the future there might be a sale of the automobile.

When the Sunbeam belonging to Yoder first became disabled he rode his motorcycle to and from Fort Knox (both he and Williams were in the Armed Services) and then it too became mechanically defective. He re-possessed his Chevrolet automobile from Williams and thereafter—within the next day or two—Yoder, while driving the Chevrolet, became involved in the accident which resulted in the judgment above mentioned.

It will be noted in the provision of the policy above quoted that coverage extends to the use of the owned automobile "or any non-owned automobile." The policy defines "non-owned automobile" as follows:

" 'Non-owned automobile' means an automobile or trailer not owned by or

furnished for the regular use of either the named insured or any relative, other than a *temporary substitute automobile;*"

And defines "temporary substitute automobile" as follows:

" 'Temporary substitute automobile' means any automobile or trailer, *not owned by the named insured,* while temporarily used as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

■ The first definition, if taken alone, indicates by the qualifying phrase "other than a temporary substitute automobile"

that coverage extends to the automobile which replaced the one named in the policy even though the insured owned both of them. However, when the policy specially defines "temporary substitute automobile" it is made plain that such an automobile must be one that is not owned by the insured.

■ We have concluded that the terms of the policy that insured the Sunbeam car did not extend to the Chevrolet car which was involved in the accident and no recovery should be had upon said policy.

In the first of the above styled cases the judgment is reversed and in the second case the motion for appeal is granted and the judgment is reversed.